UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>     PLAINTIFF,               )<br>                              )<br>vs.                          )<br>                              )<br>MITCHELL ASHER,               )<br>     DEFENDANT.               )<br>_____)   | Case # 4:05-cr-0036-001 (RRB) |

**OBJECTIONS TO DRAFT PRESENTENCE REPORT**

COMES NOW MITCHELL ASHER by and through undersigned counsel LANCE C. WELLS of the LAW OFFICES OF LANCE C. WELLS, P.C. and hereby files his corrections, interlineations, objections and departure/mitigator requests to the Draft Presentence Investigation Report prepared by Senior U.S. Probation Officer Marci D. Lundgren in the above matter as follows:

Cover Page: Correction. Sentencing date should read August 10, 2006, not August 11, 2006.

Unnumbered page 2: Correction. Legal address should read c/o Dona Quinones 312 Loma Avenue Long Beach, CA. 90814.

Para. 2, Pg. 1: Objection. This paragraph should read "Mitchell Asher self surrendered and was taken in to custody"… He was contacted by law enforcement members by telephone and met them at his parents residence at that time he was arrested.

Para. 9, pg. 2: Correction. Sentencing date should read August 10, 2006, not August 11, 2006.

Para. 11, pg. 2: Objection. The company did not have a payroll account. There was one company checking account that the checks were drafted against.

Para. 14, pg. 2: Objection. Asher does not have an investment account. This was a savings account.

Para. 16, pg. 3: Objection. Asher was not terminated, he resigned. Asher continued to make the payments on the vehicle each month that he had it. The vehicle is not valued at over $22,357. Its value is $18,708. See para. 21.

Para. 17, pg. 3: Objection. The total loss to Alkan does not reflect the recovery of the automobile which pursuant to the civil case agreement, was supposed to reduce their amount of loss to Alkan. This figure needs to be reduced by the amount of $18,708.

Para. 18, pg. 3: Objection. … "and met his wife Martha Liliana Asher who is Columbian" in Florida, not Columbia. Asher never received a termination letter. "Loose (sic) his job." Should read lose his job.

Para. 20, pg. 3: Objection. … "instead of his contracted $56,000." This figure is incorrect. The $56,000 was a net figure as to Mr. Asher. Mr. Asher never had an account with State Farm Bank. His account was with City Bank.

Para. 25, pg. 4: Clarification. Should read "OD's attorney successfully obtained a confession of judgment against Asher for his unauthorized activity over one year before the indictment. Asher showed strong remorse for his actions."

Para 28, pg. 5: Objection. Asher was not discharged form his employment, it was a mutual termination.

Para. 33, pg. 5: Objection. …he was appearing telephonically from Orange City, Florida, not North Charlotte, North Carolina.

Para 34, pg. 6: Objection. Asher self surrendered at his home after being called by the FBI. And was taken to Indra Systems at his request to surrender his passport.

Para 36, pg. 6: Objection. The figure of $122,041 is overstated. Mr. Asher also had legitimate business charges on this account as well which were authorized.

Para. 37, pg. 6: Objection. The figure of $170,252 is overstated. Some of these charges were legitimate business charges which were authorized and it appears that some of the other employees charges were credited to Mr. Asher based upon this figure.

Para. 40, pg. 7: Objection. Payments were made via ACH debit, not wire transfer. The lease buyout was paid via wire transfer…

Para. 41, pg. 7: Objection. Should read … "eleven ACH debits" not wire transfers.

Para. 44, pg. 8: Objection. Mr. Asher denies ever using the name of G.M.'s wife. William Wood quit before Mr. Asher left. Mr. Asher denies destroying any records form Alkan Shelter. Money that was lent to Mr. Asher by a fellow employee on one occasion was paid back in full. Mr. Asher denies having ever entered a locked office to retrieve or destroy anything. The total financial loss of $104,769 does not include the offset for the automobile which is valued at $18,708.

Para 46, pg. 9: Objection. Total loss was not 228,812 but closer to $198,000, this is because the credit card statements contained legitimate business expenses as well. This figure would be reduced by another $28,400 from the sale of the Volvo which would reduce the total loss to $170,000. Asher object to the additional claimed attorney fees of $129,690 as he has received no documentation regarding this at all. Asher does not oppose Indra Systems utilizing the property described in this paragraph to help reduce the restitution debt owed by him.

Para. 53, pg. 10: Objection. Asher was not terminated. He resigned. Asher continued to make the monthly payments on the company car. Asher believes the correct amount of loss attributed to him is approximately $278,000, not $342,000: $90,000 Alkan Shelter, $18,000 Olgoonik Corporation, and $170,000 Indra Corp.

Para. 75, pg. 14: Objection. Should read "The officers met the victim (Martha Liliana Asher)…

Para. 77, pg. 14: Objection. This was dealt with as a probation violation. Defendant received two years to serve. The forgery was not prosecuted.

Para. 80, pg. 14: Correction. Should read Martha M. Asher (defendant's mother).

Para. 83, pg. 15: Correction. Should read …a Hebrew school until he was 15… and "High Holiday(s)."

Para. 84, pg. 15: Correction. Lajolla should read La Jolla.

Para. 89, pg. 16: Correction. Should read …David Alexander Asher age 10…

Para. 92, pg. 16: Correction. Should read Martha M. Asher (defendant's mother).

Para. 98, pg. 19: Should include. Defendant also had emergency vascular surgery as a result of cardiac complications form his surgery in October 2004.

Para. 100, pg. 19: Should include that due to defendant's health, he was at a risk of death.

Para. 102, pg. 20: Should include. Defendant had only 3-5 years left to live without a dramatic lifestyle change.

Para. 105, pg. 20: Objection. Defendant was sent to Dr. Rothrock for a pre-surgery review to make sure he was of the right mental state to have the surgery performed. The line should read "he is planning on postoperative care at home with his sister being available…"

Para. 107, pg. 21: Objection. Asher completed professional training, not vocational training.

Para. 121, pg. 23. Objection. Defendant was employed with Vitech America in Miami, Florida. The amount of $14.67 for wages in 1993 is incorrect. $1,000,000,000 should read 100,000,000.

Para. 124, pg. 23. Should include that defendant owned and operated form 1989-1990 an ice cream shop in Maui, Hawaii (Lahaina Licks).

Para. 126, pg. 24: Objection. The paragraph should read … "Asher reported the following necessary court ordered monthly expenses…" Under Unencumbered Assets," the children's irrevocable trust belongs to them, not the defendant. The $1,000 should not be included. Under unsecured Debts it should be corrected to read child support arrears $8,000.

Para. 152, pg. 29: Objection. Defendant's position is that he total loss is approximately $278,000 which includes offsets for each automobile the Kia and the Volvo.

Para. 154, pg. 29: Correction. Defendant's name is not "Hunter."

Para. 155, pg. 29: Defendant's position is the following warrant departure/mitigation from the advisory guidelines as follows:

**The advisory guideline sentence is too harsh or is "greater than necessary."**

See August 9, 2003 Speech of Justice Anthony Kennedy at the ABA Annual Meeting ("Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms....[and they] should be revised downward."); Ranum, 353 F.Supp. 2d at 985 n.1 (quoting Justice Kennedy's statement that "our punishments [are] too severe, our sentences too long"); U.S. v. Khan, 325 F.Supp. 218, 227 (E.D.N.Y. 2004) (same); U.S. v. Antonakopoulos 399 F.3d 68, 81 (C.A.1, 2005) ("History shows that the mandatory nature of the Guidelines has produced particular results which led trial judges to express that the sentences imposed were unjust, grossly unfair, or disproportionate to the crime committed, and the judges would otherwise have sentenced differently."); Montanye v. U.S., 77 F.3d 226, 233 (8th Cir. 1996) (Bright, J., dissenting)("By any ordinary measure outside the guidelines, I would think this sentence would be considered draconian, unnecessarily harsh

and unreasonable."); United States v. Stockton 968 F.2d 715, 721 (8th Cir 1992) (Bright, Senior Judge, Concurring) ( guideline sentence "have gone awry" with sentence of 20 years for first time meth offender and is "excessively long" and "greater than necessary" and "cannot be justified in a civilized society"); United States v. Andruska, 964 F.2d 640, 646-47 (7th Cir. 1992)(Will, Senior Judge, concurring) ("the irrationality and draconian nature of the Guidelines sentencing process is again unhappily reflected in this case"); United States v. England, 966 F.2d 403, 410 (8th Cir. 1992) (Bright, J., concurring)(Although not illegal, the "draconian" sentences in this methamphetamine case "emanate from a scheme gone awry."); United States v. Harrington, 947 F.2d 956, 964 (D.C. Cir. 1991) (Edwards, J., concurring) (the guidelines "often produce harsh results that are patently unfair because they fail to take account of individual circumstances...."); U.S. v. Molina, 963 F.Supp. 213,
*215 (E.D.N.Y.,1997)(commenting on "[t]he all-too-familiar harshness required by rigid federal Guidelines...and the depredations they wreak upon individual defendants and their families.");
U.S. v. Ranum 353 F.Supp.2d 984, 986 n.1 (E.D.Wis.2005) ("Many judges have criticized the guidelines not only for their inflexibility, for also for their unnecessary harshness in many cases"); U.S. v. Jaber, 362 F.Supp.2d 365 (D. Mass. 2005) ("the Commission simply took the average national sentences for a given offense, and then increased them, without explanation, much less scientific studies"); Id. at 373-374 (in formulating the guidelines, "the Commission made no effort to implement the statutory purposes of sentencing."); U.S. v. Dyck , 287 F.Supp.2d 1016, 1019 (D.N.D.,2003) ("One long serving federal judge recently resigned his position lamenting the distress he felt "at being part of a sentencing system that is unnecessarily cruel and rigid ... I no longer want to be part of our unjust criminal justice system." Judge John S. Martin, Jr., Let Judges Do Their Jobs, N.Y. Times, June 24, 2003."); see James Q. Whitman, Harsh Justice (Oxford Press 2003) paperback ed. at 223 n. 72 ("the makers of sentencing guidelines succeeded only in contributing to the making of a law of punishment that shows obstinately little concern for the personhood of offenders...a law that tends to treat offenders as something closer to animals than humans, and that has correspondingly sought, more and more frequently, simply to lock them away"); id at page 19 ("American punishment is comparatively harsh, comparatively degrading, comparatively slow to show mercy"); Michael Tonry, The Handbook of Crime And Punishment (Oxford Press 1998) paperback ed. at page 3 ("Contemporary policies concerning crime and punishment are the harshest in American history and of any Western country."); Michael Tonry  "The Functions of Sentencing and Sentencing Reform" 58 Stanford Law Review 1, 37 n. 17  (October, 2005)( "73.7% of district judges and 82.7% of circuit judges said that federal drug-trafficking sentences are inappropriately severe, which necessarily means that many judges appointed by Presidents Reagan, Bush (1), and Bush (2) held this view. U.S. SENTENCING COMM'N, SURVEY OF ARTICLE III JUDGES ON THE FEDERAL SENTENCING GUIDELINES exhbs.II-4, III-4 (2003) http://www.ussc.gov/judsurv/jsfull.pdf (last visited Sept. 10, 2005)"); Id at 37 (the Guidelines sentences "are much severer than they need have been to pursue sentencing's overt functions.").

   United States v. Redemann, 295 F. Supp. 2d 887 (E.D. Wisc. 2003) (in bank fraud case where guidelines were 18-24 months, court departed downward two levels in part because case outside the heartland and the guideline sentence was "greater than necessary" to satisfy the "purposes" of sentencing 5K2.20.  "Courts have long recognized that where the sentence called for by the guidelines would result in punishment greater than necessary the court can depart

downward." Here D had been civilly prosecuted by the office of the comptroller of the currency and had to pay $75,000, suffered adverse publicity in small town, ruined his business, and caused ill health and ultimate death of his wife—so "the primary purposes of sentencing were partially achieved before the case was filed....and [the collateral punishment] partially satisfied the need for just punishment—district judges may consider such successive punishments ...in deciding whether to depart...."; also general deterrence achieved given what happened to the defendant ); United States v. Gaind, 829 F.Supp. 669 (S.D.N. Y. 1993) (departure granted in part because the destruction of the defendant's business already achieved to a significant extent some although not all of the objectives otherwise required to be sought through the sentencing process so 18 U.S.C. section 3553(a) , which states that "court shall impose a sentence sufficient, but not greater than necessary" to achieve the purposes of sentencing "requires me to depart downward from the Guidelines"), aff'd, 31 F.3d 73 (2nd Cir. 1994).

The abolition of parole and the infrequent use of the power of pardon and commutation render guideline sentences particularly cruel and unjust. See Justice Kennedy ABA speech of 2003 ( "I hope too, that the Bar will give consideration to ways in which we might reinvigorate the pardon and the clemency process. It's use has become most infrequent because of the soft on crime charge that's always made. And in all too many instances the pardon power has been drained of its moral force. It should be reinvigorated. A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy. As the greatest of poets has said 'mercy is the mightiest in the mightiest. It becomes the throned monarch better than his crown.'").

**Criminal Conduct Atypical And Outside The Heartland Of The Guideline.**

USSG ch. 1. Pt A comment 4(b)(departure proper where conduct "atypical" and "significantly differs from the norm" of conduct covered by the guideline); Koon, 518 U.S. at 100 ("the severity of the misconduct, its timing, and the disruption it causes" are factors which influence a district court's determination of whether the misconduct in a particular instance makes the case atypical); U.S. v. Parish, 308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child porn case because defendant's possession of photographs, which were automatically downloaded when he viewed the documents, was outside the heartland of  much more serious crimes that typical pornographers engage in, according to psychiatrist) [distinguish U.S. v. Thompson, 315 F.3d 1071 (9th Cir. 2002) (no departure because not outside heartland where D not only  deliberately possessed but also distributed porn)]; U.S. v. Sicken, 223 F.3d 1169 (10th Cir. 2000) (where anti-nuclear protestors, convicted of sabotage, destroyed property at missile sight but posed no real danger to national security, four level departure proper because district court could consider that guideline failed to adequately consider range of seriousness of sabotage offenses and this case outside the heartland); U.S. v. Sanchez-Rodriguez, 161 F.3d 556, 561 (9th Cir. 1998) (en banc) (affirming downward departure in sentencing for illegal reentry following aggravated felony based on minimal amount of drugs involved in underlying felony); U.S. v. Stockheimer, 157 F.3d 1082, 1091 (7th Cir.1998) (noting permissibility of downward departure where intended loss related to fraud conviction overstated seriousness of offense in comparison to realistic possibility of actual loss).

District Court: U.S. v. Rosenthal, 266 F.Supp.2d 1068 (N.D. Cal. 2003) (Breyer, J.) (in marijuana case, downward departure to one day in jail from 30-month range granted because defendant reasonably believed he was authorized by city of Oakland to grow marijuana for medicinal purposes taking this outside the heartland of drug cases); U.S. v. Allen, 250 F.Supp.2d 317 (SDNY 2002)(Where D convicted of drugs and guns, D entitled to 8 level departure under 5K2.0 from 80 to 30 months because his mental immaturity-even though 21 behaves like 14 year old and psychological problems and mild retardation take case out of heartland of drug and gun cases); U.S. v. Singh, 224 F.Supp.2d 962 (E.D.Pa. 2002) (where defendant illegally reentered in order to visit his dying mother and only intended to stay in country one week –as evidenced by airline ticket—departure from 37 months to 21 months proper); U.S. v. Koczuk, 166 F.Supp. 2d 757 (ED.N.Y. 2001) (where D acquitted of five counts of illegally importing caviar but convicted of single count with market value less than $100,000, but where co-D convicted of six counts of importing $11million dollars worth, D's role in conspiracy "bore little correlation to 11 million dollars because D "was not actively involved in co-D business but was "merely a low level employee – chauffeur and interpreter – who "took orders from co-D" so 4-level minimal role reduction simply not adequate); U.S. v. Nachamie, 121 F.Supp.2d 285, 297(S.D.N.Y. 2000) (the circuit has recognized that a district court can consider a defendant's initial lack of intent in granting a downward departure under §5K2.0.  That defendants did not join Nachamie's scheme with criminal intent – and then operated for an additional period of time with "diminished" intent – makes this an "atypical" case that "significantly differs from the norm" and therefore falls outside the heartland of the fraud guidelines.); see Lesser Harms below, ¶15.

In the case of Mr. Asher, his advisory guideline range is between 30-37 months based on a criminal history category of I and offense level 19. Defendant over approximately one year prior to being arrested and subsequently indicted signed confessions of judgment with Alkan Shelter as well as Olgoonik Corporation. That $16,000 in restitution was paid back to Olgoonik Corporation and Mr. Asher made the monthly payment on the Alkan vehicle prior to informing them of its location and allowing it to be recovered.

**Loss is Overstated**

See U.S.S.G. § 2B1.1, App. Note 16 (B) (eff. Jan. 25, 2003 and former App. Note 15(B), eff. Nov. 1, 2001) (where "the offense level determined under [2B1.1] substantially overstates the seriousness of the offense...a downward departure may be warranted"); U.S. v. McBride, 362 F.3d 360 (6th Cir. 2004) (in bad check and bankruptcy scam, remanded for district court to consider whether to depart downward under 2B1.1 where intended loss of over $1 million "substantially overstated" actual loss of $800); U.S. v. Oligmueller, 198 F.3d 669 (8th Cir. 1999) (upheld downward departure where actual loss amount of $829,000 stemming from false loan application overstated risk to defrauded bank warranting use of loss figure of $58,000 and offense level 11 where D had sufficient unpledged assets to support the loan amount and had paid the bank $836,000 of the amount owed when fraud discovered); U.S. v. Brennick, 134 F.3d 10 (1st Cir. 1998) (downward departure in atypical tax evasion case can be appropriate where D fully intended to pay but could not, but extent of departure (30 months) was not justified); U.S. v. Walters, 87 F.3d 663 (5th Cir. 1996) (in money laundering case, district court reasonably departed downward by six months where D did not personally benefit from the fraud; lack of

benefit was not considered by the guidelines; so §5K2.0 authorizes departure); U.S. v. Broderson, 67 F.3d 452 (2d Cir. 1995) (in white collar contracts fraud by president of Gruman Data, seven level departure o.k. in part because D did not profit personally, contracts were favorable to the government, and "calculated loss significantly . . . overstated the seriousness of the defendant's conduct" – see §2F1.1 comment. (n.7(b)); U.S. v. Monaco, 23 F.3d 793, 799 (3d Cir. 1994) (D's intent not to steal money from U.S. but to expedite payment that would have been due at some future time); U.S. v. Rostoff, 53 F.3d 398 (1st Cir. 1995) (multiple causes of the losses including permissive attitude of bank's senior management, buyer's greed, and unexpected nosedive of condo market warranted downward departure); U.S. v. Gregorio, 956 F.2d 341 (1st Cir. 1992) (departure granted because losses resulting from fraudulently obtained loan were not caused solely by the defendant's misrepresentation).

U.S. v. Redemann, 295 F. Supp. 2d 887 (E.D. Wisc. 2003) (in bank fraud case where guidelines were 18-24 months, for loss of 2.5 million, court departed downward two levels in part because loss significantly overstated seriousness of offense. "Under application notes 8(b) and 11, the court may depart when the amount of loss determined under § 2F1.1(b)(1) significantly overstates the seriousness of the defendant's offense. U.S.S.G. § 2F1.1 cmt. n. 8(b) & 11 (1998)." Here defendant submitted false invoices for work supposedly done on the bank, but he did in fact do some valuable work for the bank which was not adequately recognized by the loss figure); U.S. v. Roen, 279 F.Supp. 2d 986 (E.D. Wisc. 2003) (in mail fraud scheme where D wrote checks on closed bank accounts in the amount of $1.2 million as payment for various items he attempted to buy and where None of the checks were honored, and defendant did not obtain any goods, departure of nine levels granted on the grounds that "the amount of loss bore little or no relation to economic reality." "the discrepancy between the actual loss - $19,000 - and the intended loss - over $1.2 million - was extreme."); U.S. v. Maccaul, 2002 WL 31426006 (S.D.N.Y. Oct. 28, 2002)(unpublished) (in stock manipulation scheme by brokers, defendant granted downward departure, because "it is virtually impossible to justify imprisoning the defendants before this Court for up to five times as long as the [codefendant] who hired, inspired, and gravely misled them" and because "the loss provision…does not make sense when up to 250 people are participating [in the fraudulent scheme], and the loss is difficult if not impossible to apportion fairly."); U.S. v. Corcoran, 2002 WL 31426019 (SDNY Oct. 28, 2002) (unpub.) (four level departure for same reasons in Maccaul, supra); U.S. v. Distefano, 2002 WL 31426023 (SDNY Oct. 28, 2002) (unpub.) (three level departure for reasons set forth in Corcoran and Maccaul, supra); U.S. v. Oakford Corp, 79 F.Supp. 2d 357 (S.D.N.Y. 2000) (13 level departure granted where offense level overstates gravity offense–here each defendant personally realized "only small portion of the overall gain" of $15 million–and where agency tacitly encouraged floor brokers to "push the envelope" ).

That some of the loss attributed to Mr. Asher form Indra Systems credit card charges was actually legitimate business expenses as well as other employees expenses combined. Mr. Asher is not yet able to make a determination of just how much at this time, but that the loss is overstated because it includes these amounts. It is believed the loss to Indra Systems which includes a deduction for the Volvo sold is at or near $170,000.

**The Defendant's Crime Constituted Aberrant Behavior.**

See U.S. v. Smith, 387 F.3d 826 (9th Cir. 2004) (where D convicted of retaliating against a witness (18 U.S.C. 1513(b)(2)), case remanded to district court to reconsider its refusal to grant aberrant behavior departure, nothing that fact that defendant may have had time to plan the offense does not mean it was the result of "significant planning," and that crime lasted for ten minutes does not mean it lasted a long time; and that the conduct was indeed extraordinary); U.S. v. Vieke, 348 F.3d 811 (9th Cir. 2003) (because government made only pro forma objection, court of appeals refuses to review district court's four level downward departure to probation in credit card fraud case where district court said crime committed because of "pathological nature of the [gambling] addiction" and was "totally out of suit with the rest of her life and the behaviors" even though fraud went on for years).

For any crime that occurred before Nov. 1, 2000 (and now arguably for all cases in light of Booker), law is much more favorable (at least in the Ninth Circuit). See U.S. v. Working, 224 F.3d 1093 (9th Cir. 2000) (en banc) (where woman convicted of attempted murder of husband and use of firearm, when he threatened divorce and taking children, district court may properly depart 21 levels (on att. murder guideline) for aberrant conduct even though crime well-planned and relentlessly executed, but remanded for court to give reasons for extent (from range of 87 to 108 months to one day), but on appeal after remand, departure vacated because unreasonably great and based on impermissible factors. 287 F.3d 801 (2002); U.S. v. Lam, 20 F.3d 999, 1003-05 (9th Cir. 1994)(where law-abiding immigrant obtained sawed-of shotgun to protect his family against predators after he and pregnant sister were robbed by three gunman, and where D not aware that he possessed illegal weapon, and where only prior driving without a license, court had discretion to downward depart from 18 month sentence because of aberrant conduct-note court rejects view that aberrant conduct must be single incident; and rejects view that must be first offense); U.S. v. Fairless, 975 F.2d 664 (9th Cir. 1992) (bank robbery, down on the floor, with unloaded gun, in light of depression, loss of job, first offense, "shocked" response of family, constitutes aberrant behavior justify downward departure from 60 to 30 months); U.S. v. Morales, 972 F.2d 1007, 1011 (9th Cir. 1993) (court may downward depart for "aberrant conduct" where no criminal history); U.S. v. Takai, 941 F.2d 738, 744 (9th Cir. 1991)(multiple incidents over six-week period in effort to obtain green cards by bribing INS official still constituted a single act of aberrant behavior where D's crime did not lead to pecuniary gain, government agent influenced D to commit crime, and one D committed charitable acts-outstanding good deeds); U.S. v. Dickey, 924 F.2d 836 (9th Cir. 1991) (crime may be aberrant where D stole $80,000 which he received by bank error); U.S. v. Garcia, 182 F.3d 1165, 1176 (10th Cir. 1999) (that defendant's crime was "carefully planned" did not preclude finding of aberrant behavior because the correct focus is not on the number of discrete acts undertaken by the defendant but rather on the aberrational character of the conduct); U.S. v. Jones, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels to probation when, as one of eleven factors, it considered that crime was aberrant conduct where the defendant had been law abiding until age 35 when his marriage disintegrated).

District Court: U.S. v Myers, 353 F.Supp.2d 1026 (S.D. Iowa 2005) (where D 40 years of age with no record and lead blameless life convicted of unlawful possession of short-barreled shotgun he sold to his cousin four years earlier, and where advisory guideline 20-30 months, departure to time served and three month term of supervised release because of aberrant conduct

and because other purposes of sentencing satisfied); U.S. v. Hued, 338 F.Supp.2d 453 (S.D.N.Y. 2004) (where defendant pled guilty to making maintaining a place to store heroin with range of 41 to 51 months, downward departure of 11 levels granted under 5K2.20(c) for aberrant conduct because she "was never actively involved in the planning of the criminal conduct" and her conduct was of "limited duration" and "a marked deviation from an otherwise law-abiding life."); U.S. v. Booe, 252 F.Supp. 2d 584 (E.D. Tenn. 2003) (defendant who robbed bank with note granted 9 level downward departure for aberrant conduct because she was a 22 year old black single mother of a one year old son, had severe depression, no criminal record and felt guilt over child's well being--little planning and no violence); U.S. v. Hancock, 95 F.Supp.2d 280 (E.D.Pa. 2000)(downward departure warranted in felon in possession case where D happened upon weapon and possessed it for very short time to dispose of it, because conduct was aberrant); U.S. v. Iaconetti, 59 F.Supp.2d 139 (D. Mass. 1999) (Defendant, who had no prior criminal record and who pled guilty to the charge of conspiracy to possess with intent to distribute cocaine, was entitled to eleven-level departure from Sentencing Guidelines (from level 25 to level 14) based on "single acts of aberrant behavior"--gambling debts to a loan shark caused by defendant's gambling compulsion resulted in defendant agreeing with loan shark's idea as to how to extinguish the debts after defendant had tried to pay the debts from his personal resources, his business, and his family); U.S. v. Martinez-Villegas, 993 F.Supp. 766 (C.D. Cal. 1998)(in drug case downward departure of one level granted because of aberrant conduct where government offered much money to defendant with no criminal record to perform single act of transporting drugs); U.S. v. Delvalle, 967 F.Supp. 781 (E.D. N.Y. 1997) (defendant's involvement in drug conspiracy on two different days, separated by a week, were so loosely related they could be seen as single act of aberrant conduct warranting twelve-level departure); U.S. v. Patillo, 817 F. Supp. 839 (C.D. Cal. 1993) (first time offense, possession of 681 grams of crack, "out of character" for defendant who had stable employment history and in a moment of "financial weakness" and "unusual temptation" and demonstration of "tremendous remorse"); U.S. v. Baker, 804 F. Supp. 19, 21 (N.D.Cal. 1992) (where D pled guilty to possession of one kilogram of crack downward departure to minimum mandatory sentence proper where act was "single act of aberrant behavior"); U.S. v. McCarthy, 840 F. Supp. 1404 (D. Colo. 1993) (aberrant behavior departure to probation proper for armed bank robber who was disorganized and unsophisticated where he was also facing 5 year mandatory minimum for possession of gun).

That the crimes engaged in by Mr. Asher were aberrant in nature as he was suffering form extremely ill health, diagnosed with less than five years to live without a significant change in life style in the form of medical treatment to treat his obesity and continued heart problems. Mr. Asher's medical condition has been set forth in detail in the draft presentence report. Had it not been for the serious medical complications, Mr. Asher would not have engaged in the course of conduct that he now finds himself incarcerated for. Much of the money taken was used to have an operation performed, continued heart treatment and the payment of outstanding medical costs and expenses.

### To Enable Defendant To Make Restitution.

U.S. v. Coleman 370 F.Supp.2d 661 (S.D.Ohio 2005) (where defendant was convicted of conspiracy to violate provisions of Food and Drug Act regarding misbranded drugs, and where guidelines were 6-12 months court sentence to probation and community treatment center and house arrest in part because the "Court concludes that five years of probation, as opposed to one year of imprisonment or imprisonment with supervised release, will afford Defendants more time to pay restitution. 18 U.S.C. § 3553(a)(7)"); U.S. v. Blackburn, 105 F.Supp.2d 1067 (D.S.D. 2000) (where D pled guilty to failure to pay child support and was $15,000 in arrears, and where guideline called for 12-18 months of imprisonment with one year of supervised release, imprisonment counter-productive towards payment of child support, and court grants downward departure on its own motion to probation to make sure that defendant would be subjected to a longer term of supervision, which would have been possible if imprisonment imposed).

Mr. Asher as the court will hear at sentencing has great prospects for employment at a good salary. The use of Mr. Asher to work and be productive will go substantially further in allowing the victims to receive restitution owed to them as opposed to sentencing Mr. Asher to incarceration for a substantial period of time with supervised release to follow.

### The Defendant is Older and Presents Low Risk of Recidivism

U.S. v. Bariek 2005 WL 2334682 (E.D.Va.,2005) (where defendant convicted of operating unlicensed money business (sending funds to Afghanistan), guideline range of 37-46 months greater than necessary and 18 months imposed in part because "this is the defendant's first criminal offense. The defendant arrived in the United States in 1989 and later sought and obtained his United States citizenship. Since his arrival, he has maintained stable employment, has supported his family, and has become a well-respected member of the Afghan community. Further, there is no indication that the defendant poses a risk of recidivism. For each of these reasons, the Court finds no compelling rehabilitation need as would be served by a lengthy term of incarceration."); U.S. v. Lucania 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005) ("Post-Booker courts have noted that recidivism is markedly lower for older defendants."). U.S. v. Carmona-Rodriguez 2005 WL 840464, *4 (S.D.N.Y. April 11, 2005) ( where 55 year old woman pled guilty to distribution of drugs sentence of 30 months (below guideline range) proper in part "in view of the low probability that Carmona-Rodriguez will recidivate." Defendants "over the age of forty... exhibit markedly lower rates of recidivism in comparison to younger defendants See Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines, at p. 28 (2004) www.ussc.gov/publicat/Recidivism_General.pdf. (stating that for those defendants in Criminal History Category I, the recidivism rate for defendants who are between the ages of 41 and 50 is 6.9 percent whereas the recidivism rate for such defendants who are between the ages of 31 and 40 is greater than 12 percent, departure granted to 30 months); U.S v. Carvajal, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) ( in drug case, career offender guideline of 262 months too great; client will be 48 when he emerges from prison. the goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and

takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment." ); Simon v. U.S. 361 F.Supp.2d 35 (E.D.N.Y. 2005) ("Under the Guidelines, age was not normally relevant to sentencing. § 5H1.1. Post-Booker, however, at least one Court has noted that recidivism drops substantially with age. Nellum, 2005 WL 300073 (granting non-Guideline sentence and noting that recidivism rate for defendants between the age of 41 and 50 with a criminal history category of III is less than half that of defendants under the age of 21). "The Guidelines' failure to account for this phenomenon renders it an imperfect measure of how well a sentence protects the public from further crimes" of the defendant. I therefore conclude that a sentence of 262 months provides sufficient, but not excessive, deterrence for this defendant."); U.S. v. Nellum , 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) (where 57-year old defendant convicted of distributing crack-cocaine; and his guideline sentencing range was 168-210 months, sentence of 108 months because court had also to consider the need to deter Nellum and others from committing further crime under § 3553(a)(2). A guideline sentence would mean the defendant would be over the age of seventy at his release. The court's sentence will cause his release at 65 and "The likelihood of recidivism by a 65 year old is very low." See United States Sentencing Commission Report released in May, 2004) (located at http://www.ussc.gov/publicat/Recidivism-General.pdf.);

Defendant Asher is 49 years of age. That based upon his age and due to he fact he finds himself in criminal history category I, he has a very low rate of recidivism.

**The Defendant Manifested "Super" Acceptance Of Responsibility.**

See U.S. v. Smith, 311 F.Supp.2d 801 (E.D. Wis. 2004) (in sale of crack case, two level downward departure from heartland of sentencing guidelines granted, even though defendant also received offense level reduction for acceptance of responsibility, where defendant demonstrated self-improvement, fundamental change in attitude, and complete withdrawal from criminal drug distribution lifestyle in three years before he was arrested and before he knew he was under investigation, and those post-offense, pre-arrest rehabilitative efforts had not been taken into account in formulating guideline range.

For crimes committed before October 27, 2003, see U.S. v. Kim, 364 F.3d 1235 (11th Cir. 2004) ($280,000 restitution by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the United States and fraudulently obtaining government assistance, respectively, was extraordinary enough to remove case from heartland and justify downward departure from 24 months to probation and home detention  where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt  to pay restitution; defendants' conduct demonstrated their sincere remorse and acceptance of responsibility); U.S. v. Brown, 985 F.2d 478, 482-83 (9th Cir. 1993) (under § 5K2.0, in light of defendant's confession, court can depart downward from the range if it determines that the two point reduction did not adequately reflect acceptance); U.S. v. Miller, 991 F.2d 552 (9th Cir. 1993) (voluntary restitution exhibiting extraordinary acceptance of responsibility can justify downward departure); U.S. v. Farrier, 948 F.2d 1125, 1127 (9th Cir. 1991) (admission of guilt to other crimes can justify departure under §5K2.0, but not further adjustment for acceptance); U.S. v. Gee, 226 F.3d 885 (7th Cir. 2000)(affirms 2-level downward departure for acceptance of

responsibility under §5K2.0, where D was not eligible for adjustment for acceptance under §3E1.1 because went to trial. Defendant demonstrated a non-heartland acceptance in that he made early and consistent offers to government to determine legality of his business); U.S. v. Faulks, 143 F.3d 133 (3d Cir. 1998); U.S. v. DeMonte, 25 F.3d 343, 349 (6th Cir. 1994) (in computer fraud case, departure proper on ground that defendant admitted to crimes about which government had no knowledge, even though part of plea bargain to cooperate-remanded); U.S. v. Evans, 49 F.3d 109 (3d Cir. 1995) (voluntary disclosure of true identity resulting in increased criminal history score may warrant downward departure); U.S. v. Rogers, 972 F.2d 489, 494 (2d Cir. 1992) (district court empowered to depart downward where defendant emerged from a drug-induced state, realized his wrongdoing and turned himself in and confessed); U.S. v. Lieberman, 971 F.2d 989, 995-96 (3d Cir. 1992) (one level downward departure o.k. where D offered to make restitution greater that amount taken, met with bankers and offered to explain how avoided detection, resigned his position and went to FBI to admit his embezzlement, pled guilty); U.S. v Crumb, 902 F.2d 1337, 1339-40 (8th Cir. 1990) (voluntary surrender nine days after issuance of warrant 9 month downward departure).

   District Court: U.S. v. Rothberg, 222 F. Supp. 2d 1009 (N.D. Ill. 2002) (where defendant pled to copy right infringement without plea bargain, and where, despite the government's refusal to file motion for downward departure under U.S.S.G. § 5K1.1, defendant continued to cooperate with the government, and where, in doing so, he put himself at risk of a significant detriment: without a plea agreement, there was nothing to prevent the government from using the information he provided against him at sentencing, defendant's efforts show acceptance of responsibility that is outside the heartland of § 3E1.1, with other factors, warranted two level additional departure); U.S. v. Nguyen, 212 F.Supp.2d 1008 (N.D. Iowa 2002) (where D entered Alford plea to possessing 45 grams of crack and then testified in his sister's trial that he put them in her handbag, and she was acquitted, district court grant an extra three level departure to defendant for "extraordinary acceptance of responsibility," under U.S.S.G. § 5K2.0); U.S. v. Stewart, 154 F.Supp.2d 1336 (E.D. Tenn. 2001) (where defendant pled guilty to possession of 8 ounces of cocaine, eight-level downward departure, in addition to 3 normal levels, granted for "extraordinary acceptance" where defendant continued to plead guilty even though judge had granted codefendant's suppression motion which could have resulted in dismissal of defendant's case); U.S. v. Davis 797 F. Supp. 672 (D.C.N.Ind. 1992) (8-level downward departure proper where defendant make $775,000 restitution voluntarily); U.S. v. Ziegler, 835 F. Supp. 1335 (D. Kan. 1993) (downward departure justified for complete acceptance of responsibility exhibited by extraordinary drug rehabilitation in that defendant had smoked 20 marijuana cigarettes a day for 20 years and stopped).

   Defendant upon being confronted by Alkan and Olgoonik (over one year prior to arrest), signed confessions of judgment, and helped Olgoonik recover over $16,000 in funds due them. He further made all monthly payments on the Kia automobile owned by Alkan, notified them of its location so that it could be returned and signed a confession of judgment with them as well. Defendant further did not contest the charges against him and pled to all counts

   **Defendant Showed Extreme Remorse.**

U.S. v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998)(because guidelines do not expressly forbid the departure, under rationale of Koon, court may downward depart where defendant showed great remorse "to an exceptional degree" even though D already received adjustment for acceptance of responsibility); U.S. v. Jaroszenko, 92 F.3d 486 (7th Cir. 1996).

See above under super acceptance of responsibility specifically as to Mr. Asher.

**Rehabilitation in the Future**

US v. Hawkins, 380 F.Supp.2d 143 (EDNY 2005 (in insurance fraud case, where guidelines 12 to 18 months, sentence of probation imposed. The fact that defendant engaged in further criminal activity while she was in the process of rehabilitation does not preclude a finding of rehabilitation—which "often means turning a bad life into a decent, honorable, law-abiding life" or when "a relatively decent person falls into bad conduct, but immediately and permanently repents" "Since Booker, the Guidelines are no longer a straitjacket binding courts to artificially created and cruel paradoxes of sentencing, by insisting not only on rehabilitation, but on extraordinary rehabilitation." ); U.S. v. Carvajal, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) (in drug case, career offender guideline of 262 months too great; client will be 48 when he emerges from prison. The goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment." ); United States v. Bryson, 163 F.3d 742, 746 (2d Cir.1998) ("This Court has held that a sentencing judge may exercise discretion and depart from the applicable guideline range in light of a defendant's efforts toward rehabilitation, provided those efforts are extraordinary."); United States v. Rosado, 254 F.Supp.2d 316, 321 (S.D.N.Y.2003) ("Since rehabilitation may not be a basis for incarceration but must be considered as a basis for sentencing, Congress must have anticipated that sentencing judges would use their authority, in appropriate cases, to reduce a defendant's sentence to permit him to continue his rehabilitation in the most effective manner.")

Mr. Asher has an opportunity to accept a good paying position with another company as a job has already been offered to him. It will allow him to repay the monies taken in a timely manner and to ensure the victims are repaid in full.

**Post-Offense Restitution.**

U.S. v. Kim, 364 F.3d 1235 (11th Cir. 2004) (Payment of $280,000 restitution by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the U.S. was extraordinary enough to remove case from heartland and justify downward departure from 24 months to probation and home detention where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt to pay restitution); U.S. v. Garlich, 951 F.2d 161, 163 (8th Cir. 1991) (district court erred in failing to exercise its discretion to determine if defendant who turned over assets of $1.4 million to cover loss of $253,000 merited departure for extraordinary restitution); U.S. v. Miller, 991 F.2d 552, 553-54 (9th Cir. 1993)

(remanding for district court to determine whether $58,000 repaid for $45,000 embezzled constituted atypical restitution); U.S. v. Hairston, 96 F.3d 102, 107-08 (4th Cir.1996) (1997) (payment of restitution can, in exceptional circumstances, be basis for departure from sentencing guidelines-here, however, restitution of less than half of money embezzled and only after indictment to avoid civil liability not extraordinary); U.S. v. Lieberman, 971 F.2d 989, 996 (3d Cir. 1992) (affirming departure where defendant agreed to pay "$34,000 more than he thought he owed and to which he pled guilty"); U.S. v. Bennett, 9 F.Supp.2d 513 (E.D.Pa. 1998) (even where defendant does not accept responsibility, his full restitution early in case and efforts to recover funds warranted downward departure 91 months (from 235 to 144) in part under §5K2.0); U.S. v. DeMonte, 25 F.3d 343, 346 (6th Cir. 1994) (stating that "we have acknowledged that restitutionary payments may constitute 'exceptional circumstances' that justify a downward departure"); U.S. v. Bean, 18 F.3d 1367, 1369 (7th Cir.1994) ("Undoubtedly there are circumstances that would justify using § 5K2.0 to [depart downward on the basis of restitution] beyond [the] two levels [of reduction provided by § 3E1.1]."); U.S. v. Oligmueller, 198 F.3d 669, 672 (8th Cir.1999) (affirming a district court's downward departure on the basis of extraordinary restitution because "[w]e have previously held that cases can fall outside the heartland when there are extraordinary efforts at restitution").

Mr. Asher has taken steps since the events happened and before he was charged to help the victims recover as much money as possible as well as the automobile belonging to Alkan. He signed voluntary confessions of judgment with Alkan and Olgoonik. He has further allowed all of his personal items in the possession of Indra Systems to be utilized for restitution in advance of the court entering a restitution order.

### Needed Medical Care

U.S. v. Carmona-Rodriguez 2005 WL 840464, *4 (S.D.N.Y.,2005) (where 55 year old with no priors pled guilty to distributing drugs, court sentences below applicable guidelines in part because, post Booker, needed medical care is a factor that must be considered along with the guidelines. "It is also significant that the defendant is suffering from high blood pressure and diabetes and that she has received psychiatric treatment for anxiety and depression since 1994. See Nellum, 2005 WL 300073, at *4 (stating that § 3553(a)(2) and Booker " 'require judges to impose sentences that ... effectively provide the defendant with needed medical care." ') (quoting Booker, 125 S.Ct. at 765.)

Mr. Asher is on multiple medications for his heart condition etc. He suffers from extreme ill health and multiple medical reports have been provided to the probation officer outlining all of Mr. Asher's medical issues.

### Defendant Has Extraordinary Physical Impairment Or Bad Health and BOP may not be able to provide adequate care.

U.S.S.G. §5H1.4 makes "physical appearance including physique" not "ordinarily" relevant, but may be so in unusual cases. Booker undermines restrictions of the guidelines. This departure is available even in sex with minor cases and child porn cases. USSG § 5K2.22

(effective April 30, 2003). 5H1.4 provides that "an extraordinary physical impairment may be a reason to impose a sentence below the guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." See U.S. v. Martin, 363 F.3d 25, 50 (1st Cir. 2004) (in tax fraud case, three level downward departure proper (and possibly more on remand) where "several serious medical conditions make Martin's health exceptionally fragile [and] ...we are not convinced that the BOP can adequately provide for Martin's medical needs during an extended prison term [and] There is a high probability that lengthy incarceration will shorten Martin's life span); See U.S. v. Gee, 226 F.3d 885 (7th Cir. 2000) (downward departure under §5H1.4 based on health not abuse of discretion where judge reviewed 500 pages of medical records and where judge concluded that "imprisonment posed a substantial risk to [defendant's] life," BOP letter stating that it could take care of any medical problem "was merely a form letter trumpeting [BOP] capability"); U.S. v. Johnson, 71 F.3d 539, 545 (6th Cir. 1995) (under U.S.S.G. §5H1.4, although "rare," downward departure possible for physician convicted of distribution of drugs and mail fraud based on his medical condition where defendant was a 65-year-old man who suffered from diabetes, hypertension, hypothyroidism, ulcers, potassium loss, and reactive depression, but specific findings required); U.S. v. Streat, 22 F.3d 109, 112-13 (6th Cir. 1994) (remanded to district court observing that court has discretion to depart because of defendant's "extraordinary physical impairment"); U.S. v. Long, 977 F.2d 1264, 1277-78 (8th Cir. 1992) (D's extreme vulnerability to victimization in prison justifies downward departure where four doctors said so); U.S. v. Greenwood, 928 F.2d 645 (4th Cir. 1991) (where D was felon who possessed firearm, departure to probation proper where D's had severe medical impairment caused by loss of both his legs below his knee due to action in the Korean where D required treatment at Veterans Administration hospital and that incarceration would jeopardize such treatment); U.S. v. Lara, 905 F.2d 599, 605 (2d Cir. 1990) (same); U.S. v. Gonzalez, 945 F.2d 525 (2d Cir. 1991) (D's feminine cast and softness of features justifies downward departure because he will be victimized in prison); U.S. v. Slater, 971 F.2d 626, 635 (10th Cir. 1992) (mental retardation, scoliosis of spine and chronic pain may warrant departure under §5H1.4); U.S. v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991) (loss of both legs in war, which required ongoing treatment that would be jeopardized by incarceration, justified downward departure to probation); but see U.S. v. Martinez-Guerrero, 987 F.2d 618, 620-21 (9th Cir. 1993) (departure properly denied for legally blind defendant because prison could accommodate him).

District Court: U.S. v. Seiber, 2005 WL 1801614 (E.D. Tenn. Jul 29, 2005) (even though court rejects downward departure for extremely poor health for 69 year old widow of veteran convicted of sale of oxycontin, where guidelines 97-121 months, and where minor prior convictions, court imposes non guideline Booker sentence of probation); U.S. v. Pineyro, 372 F.Supp.2d 133 (D.Mass. 2005) Defendant convicted of felon in possession with guidelines 46-57 months granted departure to time served (15 months) in part because of extraordinary physical condition as result of his heterotopic ossification (HO)where BOP failed to show that it could provide defendant with needed medical care for HO--"Despite the BOP's assurances, which I found to be less than persuasive, I concluded that Pineyro's condition could not be adequately addressed in a BOP facility. The vague promises given by the BOP about what it could do to accommodate Pineyro did not begin to compare with the existing, detailed treatment plan of Pineyro's doctors–pain medication, psychiatric and physical therapy, and regular surgical

interventions. and granted discovery on the issue for both sides." "Indeed any sentence of imprisonment beyond what Pineyro has already received--would substantially disrupt an existing, elaborate and required medical treatment plan for Pineyro's HO, wholly without justification. The purposes of sentencing under 18 U.S.C. § 3553(a) can be met by a nine level departure to sentence of 15 months (which equals "time served"); U.S. v. Willis, 322 F. Supp. 2d 76, (D. Mass. 2004) (in tax evasion case downward departure granted to 69 year old from 27 months to probation with six months home confinement based upon inordinate number of potentially serious medical conditions, and was at age where such conditions would have invariably gotten worse in prison—in response to gov. argument that BOP could care for defendant, court said "I have never had a case before me in which the Bureau of Prisons suggested that it did not have the capacity to care for a defendant"); U.S. v. Jiminez, 212 F.Supp.2d 214 (S.D.N.Y. 2002) (where D convicted of illegal reentry, downward departure from range of 57-71 required because after crime was committed she has suffered brain aneurism severe memory loss, and psychotic symptoms. court rejects position of gov. that departure warranted only if physical ailment cannot be adequately treated by BOP.); U.S. v. Lacy, 99 F.Supp.2d 108 (D.Mass. 2000) (three-level downward departure warranted in drug case where D has bullet in his brain causing lost partial hearing in his left ear, has blood clots in his arteries, and experiences seizures); U.S. v. Hammond, 37 F.Supp.2d 204 (E.D.N.Y. 1999) (defendant in drug case suffering from advanced HIV entitled to a downward departure from 48 to 18 months where family will suffer extraordinary financial and emotional harsh from his incarceration); U.S. v. Gigante, 989 F.Supp. 436 (E.D.N.Y. 1998) (despite vicious criminal past as Mafioso, downward departure granted from 262 months to 144 months because of advanced age (69) and bad heart); U.S. v. Blarek, 7 F.Supp.2d 192, 212-13 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir.1998); U.S. v. Baron, 914 F.Supp. 660, 662-665 (D.Mass. 1995) (in bankruptcy fraud, downward departure from range of 27-33 months to probation and home detention to a 76-year old defendant with medical problems which could be made worse by incarceration); see U.S. v. Moy, 1995 WL 311441, at *25-29, *34 (N.D.Ill. May 18, 1995) (downward departure based upon defendant's advanced age, aggravated health condition, and emotionally depressed state); U.S. v. Roth, 1995 WL 35676, at *1 (S.D.N.Y. Jan. 30, 1995) (63-year-old defendant with neuromuscular disease had "profound physical impairment" warranting downward departure under the Guidelines); U.S. v. Velasquez, 762 F.Supp 39, 40 (E.D.N.Y. 1991) (life-threatening cancer warranted downward departure); U.S. v. Patriarca, 912 F.Supp. 596, 629 (D.Mass. 1995) (same); See United States v. Ribot, 97 F.Supp.2d 74, 84 (D.Mass.1999) (downward departure of seven levels justified to preserve treatment plan).

  That it is believed that the BOP will not be able to adequately meet all of Mr. Asher's medical needs due to their seriousness. Medical records have been provided to probation for review and submission to this court. Numerous references have been made to them throughout the draft presentence report.

  Thank you for taking the time to consider the above.

  Respectfully submitted this 5th day of July, 2006.

Law Offices of Lance C. Wells, P.C.

By: s/ Lance C. Wells, Esq. 9206045 AK Bar #
733 W. 4th Avenue, Suite 308
Anchorage, AK. 99501
t 907-274-9696
f 907-277-9859
email lwells@gci.net

**Certificate of Service**

On 7/5/06 a copy of this document was served by electronic means to Stephen Cooper, AUSA at his electronic address of record. A copy was further served upon Marci D. Lundgren, Senior US Probation Officer at her fax number of record as well as by US Mail delivery.

7/5/06        s/ Lance C. Wells

Case 4:05-cr-00036-RRB    Document 28    Filed 07/05/2006    Page 20 of 20