DEBORAH M. SMITH
Acting United States Attorney

STEPHEN COOPER
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, AK 99701
Phone:  (907) 456-0245
Fax: (907) 456-0577
E-mail: stephen.cooper@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  4:05-cr-036 (RRB) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S SENTENCING** |
| vs. | ) | **STATEMENT** |
| | ) | |
| MITCHELL ELLIS ASHER, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Plaintiff, the United States of America, and offers the following

points regarding sentencing, which is now set for August 10, 2006, at 10:00 a.m. in

Fairbanks.

Plaintiff concurs in the Presentence Report, and in the responses to defendant's objections as set forth in the Addendum to the PSR with a few exceptions in the area of restitution as explained below.

Plaintiff will not offer witnesses or evidence, but the victim companies are expected to have representatives present to offer their statements as victims of defendant's offenses. Victim statements have already been included in the PSR, at ¶¶ 44-46. The victims are expected to maintain the loss and restitution amounts shown in the PSR, except for Alkan Shelters (involved in Counts 1-5 and 8-12 of the Superseding Information), as explained below.

The losses of Olgoonik Development and of Todd Communications are apparently not in dispute. Some aspects of Alkan Shelter's losses require further analysis, and the losses of Indra Systems are partly disputed by defendant. These are discussed below.

Alkan

Just yesterday Alkan informed plaintiff's counsel that the following items had not been included in the figures the parties have been considering, and should be included. A company representative is expected to explain these points as part of Alkan's victim impact statement to the court at the time of the sentencing:

a.    Alkan provides the additional loss figure which largely, if not completely, explains the discrepancy between the PSR's computation of Alkan's loss, i.e., what defendant wrongfully obtained, as $92,318.72 (PSR, ¶¶ 17 and 53) and Alkan's claim of $104,769.79 (including attorney's fee of $4,750) in PSR ¶¶ 44 and 152. The PSR loss amount should be increased by $7,126.50 which defendant obtained by not deducting from his own paychecks the amounts he should have deducted for insurance and similar deductions. This omission, if added to the PSR loss figure of $92,318.72, brings it up to $99,445.22. This is only $574.57 short of what the PSR recognizes as Alkan's claimed total of $104,769.79 (including attorney's fee of $4,750). Defendant's failure to take the proper deductions of $7,126.50 from his own paychecks is not charged conduct but is relevant conduct

within the entire scheme of embezzling from Alkan. It should be included in the loss for purposes of computing the offense level, but standing alone it does not change that level. It helps explain the claimed total loss of $104,769.79.

        b.      The loss amount for restitution purposes, $104,769.79, should be increased by interest in the approximate amount $32,000 on the stolen property.

        c.      The loss amount for restitution purposes should also be increased by the amount of accountant's time in reconstructing the books which defendant had substantially destroyed by his activities before his departure from Alkan. The accountant Diane Peterson spent over 900 hours gathering information and reconstructing accounting files and records. At her billable rate, the cost to Alkan was $54,360.00. This and other additional elements are mentioned in Alkan's victim impact statement, PSR ¶ 44, without specifying the dollar amounts.

        d.      Also mentioned in ¶ 44 without an amount is the cost of credit monitoring by three credit bureaus. That amount is $135.

e.     The late filing penalties and interest also mentioned in ¶ 44 amounted to $480 for W-2's and $1,340.11 for 941's.

f.     The computer forensic firm costs mentioned in ¶ 44 were $1,780.

g.     The value of the stolen vehicle when recovered by Alkan has been set by the PSR at $18,708.  PSR ¶ 152.  That figure reflects what was still owing to the finance company on the car at that point, but it bears no relation to the loss to the victim in terms of the depreciation of the vehicle, the loss of its use and the cost of replacing it while it was away, and what it would cost to retrieve the vehicle and return it to Alaska from the east coast more than a year after it was stolen.  Alkan sent one of its employees to North Carolina to pick up the car and drive it to New Mexico for storage until Alkan could allocate further employee time and resources to get it the rest of the way home, or sell it.  In order to have gotten it all the way back to Alaska at that time, the cost of doing so would be approximately $6,476.  To this must be added the loss of use including cost of replacing the vehicle during its absence, in an amount not yet calculated by Alkan. Whatever that total is, should be subtracted from the value of the car when it was

stolen, i.e., $24,500.  The resulting figure, not the $18,708 in the PSR, is the

proper amount of Asher's credit toward the total amount of restitution owed to

Alkan.

Thus, the total restitution amount for Alkan should be the originally claimed

$104,769.79, plus approximately $32,000 in interest, plus $54,360 in accounting

costs, plus $135 for credit monitoring, plus $480 and $1,340.11 for late-filing

penalties and interest, plus the cost for the computer forensic firm of $1,780.  The

total restitution amount is $194,864.90.

Of this amount, Alkan has recovered the vehicle, the value of which is

$24,500 less $6,476 in recovery costs, less an additional amount not yet

determined for loss of use including the cost of purchasing a replacement and

subtracting what might be realized by selling either the replacement or the vehicle

Asher stole.

Indra Systems

Defendant has objected to PSR ¶¶ 36, 37 and 46 on the claim that some of the credit card charges were for legitimate business expenses. The total amount thus in dispute is over $24,000. It is unnecessary to analyze every credit charge involved in this dispute and decide whether Asher has supported his claim that each such charge was legitimate. The accountants and the company officers have stated that the only legitimate business charges were those submitted by Asher on expense reports. No others are recognized. Both the auditor Les W. Eiserman and the Indra Vice President Angela Salva have so stated in writing, true copies of which were produced in discovery. They will be offered at the hearing, as will Angela Salva who wishes to speak as representing the victim company.

It is entirely inconsistent with Asher's conduct as an embezzler that he would fail to claim reimbursement for $24,000+ in legitimate business expenses, while he had claimed $80,000 in reimbursement for legitimate expenses and was busy stealing over $200,000 in illegitimate transactions. The contention is not credible.

The entirety of the $122,041 consisted of unauthorized charges by Asher. That amount is included in the total of $170,252 in ¶ 37.  Therefore, ¶ 37 does not require separate consideration, or a different analysis from that of ¶ 36.

¶ 37 reflects the amount obtained through Asher's Mail Fraud scheme (Counts 26-43; PSR ¶ 38).  The amount of the $170,252 which exceeds the $122,041 of unauthorized credit card charges, is $48,211.  This represents legitimate business expenses Asher charged on the credit card and for which he submitted expense claims and was reimbursed.  He had about $80,000 of such legitimate expenses, and he received reimbursement of that amount.  By company policy to which he agreed, he was required to use that $80,000 reimbursement to pay the credit card bill.  He did so in part, only to the extent of about $32,000 out of the total of $80,000.  Asher paid the remaining approximately $48,000 of credit card bills for those authorized expenses (for which he had already been reimbursed) by having Indra checks issued to Bank of America (i.e., Indra paid the $48,000 twice, once to Asher and once to Bank of America).  Those checks covering the $48,000 and other Indra checks covering the remainder of $122,041

of unauthorized charges, are what make up the total of $170,252 in the Mail Fraud

counts (26-43).


Regarding attorney's and accountant's fees, plaintiff has produced what

documentation it has.  Plaintiff intends to inquire of the victim witness about any

such documentation.


The total identifiable amount Asher obtained from Indra was 222,812.  The

attorney and accounting fees were $129,690.  The total loss as to which Asher

should make restitution to Indra is $352,502, with credit for recovery of $28,400

from the vehicle and $9,203.48 in property of Asher.


Total Amount of Restitution


Due to the added amount of $90,095.11 in restitution due to Alkan, that

amount should be added to the total restitution owing:

Alkan -              $194,864.90

Olgoonik -            $37,810.00

Indra Systems -     $352,502.00

Total thus far -     $585,176.90.

Restitution should be entered for this amount, plus the amount described below

relating to victims' attendance at the sentencing.  The amount to be credited

toward that total consists of $16,073.71 recovered by Olgoonik, $28,400 and

$9,203.48 recovered by Indra, and an undetermined amount recovered from the

vehicle by Alkan.

Offense Level
‾‾‾‾‾‾

Plaintiff concurs in the assessment in the PSR Addendum, pp. 22-23, that

based on the foregoing disputes, defendant has falsely denied and frivolously

contested relevant conduct, and should be denied the 3 level adjustment for

acceptance of responsibility.  This puts the offense level at 22, with a guideline

range of 41 to 51 months.

Points and Authorities

Restitution should be entered for "the full value of the property loss," United States v. Dubose, 146 F.3d 1141, 1143 (9th Cir. 1998), less the value of any property that is returned.  18 U.S.C. § 3663A(b)(1)(b), the Mandatory Victims Restitution Act of 1996, P.L. 104-132, April 24, 1996, (MVRA).

In addition, under 18 U.S.C. § 3663A(b)(4),

The order of restitution shall require that such defendant — in any case, reimburse the victim for . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

Asher's case is governed by the MVRA, making restitution mandatory "in the full amount of each victim's losses," 18 USC § 3664(f)(1)(A), because his offenses of convictin were offenses against property, and also because they were committed by fraud and deceit.  § 3663A(c)(1)(A)(ii).

The primary and overarching goal of the MVRA is to make victims of crime whole. In achieving this objective, Congress intended courts to engage in an expedient and reasonable restitution process, with uncertainties resolved with a view toward achieving fairness to the victim.

United States v. Gordon, 393 F.3d 1044, 1048 (9th Cir. 2004)

"This circuit has adopted a *broad* view of the restitution authorization [for investigation costs]." *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004) (citation omitted ) (emphasis added). Generally, investigation costs – including attorneys' fees – incurred by private parties as a "direct and foreseeable result" of the defendant's wrongful conduct "may be recoverable." *Id.;* [citing cases of restitution for costs of victims' own investigations made necessary as a result of defendants' crimes].

Gordon at 1057.

The PSR, ¶ 44, sets forth Alkan's victim impact statement claiming losses of a number of different kinds, all of which are within the scope of these provisions for restitution.

Several of Alkan's claimed categories of loss were clearly outside those that formed the total dollar figure of $104,769.79 stated in that paragraph.  Thus, the PSR revealed that the actual dollar amount of all of Alkan's losses was not yet ascertained.  The draft PSR contained this same paragraph 44.  The draft PSR is dated June 19, 2006.

18 U.S.C. 3664(d)(5) provides in part:

If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

Due to the fact that a significant amount of Alkan's losses were not ascertained by

a date well before the 10-day statutory period before sentencing, the Court is

required by § 3664(d)(5) to "set a date for the final determination of the victim's

losses, not to exceed 90 days after sentencing." Those losses have almost entirely

been determined by this time, however, except for the victims' expenses of

attending the sentencing, as noted below. One additional category still in question

is the end-value of the vehicle recovered by Alkan, after deducting loss of use and

the related factor of loss due to acquiring a replacement vehicle.


Even if there had been no notice, in any form, a full 10 days before the

sentencing that some of the claimed losses were not then ascertained, a non-

compliance with the pre-hearing notice requirement of § 3664(d)(5) constitutes

harmless error in the absence of resulting prejudice. See United States v. Johnson,

400 F.3d 187, 198-199 (4th Cir. 2005) (finding harmless error where no prejudice

accrued and upholding order requiring restitution of losses which were not

ascertained by the time of the sentencing hearing where neither the probation

officer nor the government notified the court ten days before the hearing that the

losses were not ascertainable; finding this analogous to the 90-day limit imposed

by the same subsection of § 3664 for determining restitution following sentencing,

which is widely held to be subject to harmless error analysis; and stating that "the

procedural requirements of § 3664 are intended to protect victims, 'not the

victimizers'"); United States v. Dando, 287 F.3d 1007, 1009-1011(10th Cir. 2002)

(applying harmless error analysis and upholding restitution order where both the

ten-day prior notice requirement and the 90-day limit following sentencing were

not complied with).

Here, one of the victims has taken longer than the others to put a dollar

amount upon its losses, even though most of those losses were identified at least as

to type prior to the date of the draft PSR on June 19.  The procedural requirements

relating to timing and notice "are intended to protect victims, 'not the

victimizers.'"  Johnson, 400 F.3d at 199.

It is also evident that under § 3664A(b)(4), there will be yet additional

expenses of all the victims who attend the sentencing proceeding, which expenses

are required to be made part of defendant's mandatory restitution, namely,

expenses incurred during participation in the investigation or

prosecution of the offense or attendance at proceedings related to the

offense.

These amounts, not ascertainable until after the hearing at which representatives of

the victims will attend, must be calculated and included in the total restitution

order.

The Sentence

Having caused losses which now exceed $585,176.90 and are mounting,

and having denied and frivolously contested substantial parts of the claimed losses

that have been well substantiated, defendant asks the Court to find that he is an

appropriate candidate for a departure from the guideline sentence, either as a

guideline departure or as a matter of the Court's assessment of the sentencing

factors under 18 U.S.C. § 3553(a).  The more closely one examines this case,

however, the more involved and damaging the defendant's conduct appears.

While professing to agree to restitution, he has so separated himself from the ill-gotten gains worth more than $358,000 which he embezzled over the two- and one-half year period of these offenses, that he now claims total assets of only $19,781. This is an insult to normal intelligence. Consumption of assets does not account for the discrepancy. The Court should not be deceived. This is just a case of a thief who has a good scheme worked out to keep the loot. This is more revealing than any character testimony could be, as to defendant's attitude and, accordingly, his unsuitability for a reduced sentence, as well as his negative prospects for rehabilitation and for making a good-faith effort to make his victims whole. This is deeply discouraging as to the likelihood that he will cooperate at all with this Court in making any of his hidden assets available to pay his just debts. Defendant does not need liberty in order to pay restitution. He needs to cooperate in giving back what he took.

The probation officer spoke well in the PSR Addendum regarding defendant's lengthy sentencing arguments, relative to the § 3553(a) factors and the guideline range. A sentence of 41 to 51 months is not at all greater than necessary, considering the totality of defendant's offenses, the number of victims in the two-

and-one-half year time period involved, the continuous nature of the activity, the large amount of loss caused, and the aggravating factor of using another person's identity. Defendant took very little time to begin stealing from a new victim after being found out by the previous one. His signing of confessions of judgment seems unrelated to any intention to stop his embezzlements or restore his prior victims. In view of these and all other factors, including his prior record of similar conduct, defendant's conduct was not aberrant. It was consistent through time and multiple changed contacts and circumstances. It was in character. The risk of recidivism is therefore high.

Far from showing "super" acceptance of responsibility, defendant has shown none at all. Even after being taken to court to pay his civil liabilities, he did not slow his criminal activity in the least. Far from showing remorse, he showed a continuing commitment to furthering his dishonest schemes, and has continued the effort through this proceeding in putting forth false claims that large amounts of his unauthorized credit card charges were legitimate. Far from showing prospects for rehabilitation, his schemes were unstoppable except by his incarceration, and he continues at this time to hide the stolen monies. Far from

making any restitution, he has only paid a portion of what was he was compelled

to pay by civil suit.  And finally defendant has no physical problem which the

Bureau of Prisons cannot address fully.


As the PSR Addendum further observed, the factors in § 3553(a)(2), as well

as the other subsections, are essential here.  The sentence is required to reflect the

seriousness of the offense, promote respect for the law, provide a just punishment,

afford adequate deterrence to criminal conduct, protect the public from further

crimes of this defendant, and provide defendant with needed medical care or other

correctional treatment in the most effective manner.


Based on the totality of all these factors, defendant warrants a 51 month

sentence.  This will avoid unwarranted sentencing disparities among defendants

similarly situated, and will satisfy all the other factors which must be considered,

including defendant's need to provide full restitution to all victims of these

offenses.

The Guidelines, at § 5D1.3(a), provide certain mandatory conditions of supervised release. Among them is (a)(6), that "defendant shall . . . make restitution . . . ." "Special" conditions are recommended, including (d)(3) requiring "defendant to provide the probation officer access to any requested financial information."

Under 18 U.S.C. § 3583(d), the Court may order "any other condition it considers to be appropriate" to the extent that such condition

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

In light of the entire foregoing discussion and analysis of sentencing factors as applied to this case and this defendant, these statutory criteria are consistent with the additional condition of supervised release which plaintiff here requests, specifically, that

> Defendant shall cooperate with the United States and with the United States Probation Office in paying full restitution, and in determining the location and availability of assets to satisfy the restitution which has been ordered;
>
> shall assist the Probation Office in producing those assets and providing access to them and making them available for payment of restitution;
>
> and shall disclose fully and truthfully to the Probation Office all information he has on this subject.

This condition is both eminently fair and reasonable, and also essential to

effectuating the restitution order that will be entered.


WHEREFORE, sentence should be entered accordingly.


RESPECTFULLY SUBMITTED this 3rd day of August, 2006, at

Fairbanks, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

/s/ STEPHEN COOPER
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone:  (907) 456-0245
Fax: (907) 456-0577
E-mail: stephen.cooper@usdoj.gov
AK #6911028

**DECLARATION**
I declare under penalty of perjury that a true and correct
copy of the foregoing **PLAINTIFF'S SENTENCING STATEMENT**
was sent to the following counsel of record on August __3__,  2006, via
electronic filing notice:

Lance C. Wells
Law Offices of Lance C. Wells, P.C.
733 W. 4th Avenue, Suite 308
Anchorage, Alaska 99501


  /s/ Stephen Cooper
Office of the United States Attorney


U.S. v. Asher                          22                    4:05-cr-036 (RRB)